IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs October 29, 2019

## STATE OF TENNESSEE v. GREGORY COOK

**Appeal from the Circuit Court for Blount County**
**No. C25464   Tammy M. Harrington, Judge**

————————————————————

**No. E2019-00257-CCA-R3-CD**

————————————————————

The defendant, Gregory Cook, appeals the order of the trial court revoking his probation and ordering him to serve his original four-year sentence in confinement. Upon review of the record, we conclude the trial court did not abuse its discretion in finding the defendant violated the terms of his probation, and the imposed sentence is proper. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and D. KELLY THOMAS, JR., J., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal) and Mack Garner, District Public Defender (at trial) for the appellant, Gregory Larue Cook.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Mike Flynn, District Attorney General; and Tiffany Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

On November 6, 2017, the defendant, Gregory Cook, pleaded guilty to aggravated assault for threatening to behead his stepfather and his stepfather's dog with a hatchet. As a result of his plea, the defendant received a four-year sentence with the Department of Correction, suspended to supervised probation after serving fifty days in confinement. As conditions of his probation, the defendant was required "to take the Batterer's

Intervention Program, complete an a[lcohol] and d[rug] assessment, [complete] 100 hours of community service, and have no contact with the victim."

A probation violation warrant was issued for the defendant's arrest on November 16, 2018. According to the violation report, the defendant violated the terms of his probation by: 1) failing to report as instructed for an alcohol and drug assessment on July 25, 2018, August 22, 2018, and September 19, 2018; 2) testing positive for amphetamine and methamphetamine and admitting to the use of the same; 3) failing to make "a single payment towards his court costs or supervision fees;" 4) failing to obtain an alcohol and drug assessment as order by the court. A revocation hearing was held on January 7, 2019.

At the revocation hearing, Ms. Sylvia Popova, a probation officer with the Department of Correction, testified the defendant was assigned to her in November 2017. While the defendant reported as instructed and was employed, the defendant failed to report on three separate occasions for an alcohol and drug assessment. Ms. Popova also stated this was the defendant's second probation violation. On April 3, 2018, the defendant's probation was violated and revoked for a failed drug test, testing positive for methamphetamine and amphetamine. As a result, he was sentenced to serve an additional 100 days in confinement and return to probation with the same conditions.

According to Ms. Popova, the defendant has yet to undergo an alcohol and drug assessment as a condition of his probation. While the defendant sought treatment for his drug and alcohol issues at Comprehensive Community Services ("CCS"), he was discharged prior to completion of the program. The defendant also entered two different half-way houses but was discharged from them as well.

According to Ms. Popova, she scheduled an alcohol and drug assessment for the defendant on three separate occasions, yet the defendant never completed the assessment. The defendant did show for one appointment but left before the assessment could be completed. Ms. Popova also testified that the defendant has not made any payments towards his supervision fees or court costs despite being employed.

The defendant also testified during the revocation hearing. The defendant admitted he first violated his probation in the spring of 2018, for testing positive for methamphetamine and amphetamine. As a result of violating the terms of his probation, the defendant was ordered to serve 100 days in jail and then returned to supervised probation for the remainder of his sentence. Upon being released, the defendant lived with his mother and was working at Denso and Waffle House.

The defendant also admitted he missed three separate appointments for his alcohol and drug assessment despite knowing that such an assessment was a term of his probation and that the failure to complete the assessment would constitute a violation of his probation. According to the defendant, he "messed around" with drugs about two weeks prior to his first assessment appointment. He then used drugs on two more occasions prior to being arrested on the November 16, 2018 violation warrant.

The defendant admitted to having a drug problem but stated he knew "how important it is for me to stop doing it, I do know that now." The defendant then asked the trial court to give him "one more chance, you know, to actually do what I'm supposed to do. . . ."

When asked by the trial court if he had a place to live and a job if released on probation, the defendant informed the trial court he did not have either arranged as of the time of the hearing. The defendant also admitted he had "been using" methamphetamine for "about two years." On cross-examination, the defendant admitted he violated the no-contact order by living with his mother and the victim upon release after his first violation.

At the conclusion of the hearing, the trial court found the State had established each alleged violation, even noting that the proof was uncontroverted, and therefore, the defendant "has materially violated the terms and conditions of probation." Based on its finding, the trial court revoked the defendant's probation. In determining the appropriate remedy for the defendant, the trial court expressed concern that the defendant had "no plan. Where's he going to live, what's he going to do?" The trial court also expressed concerned with the fact that previous attempts at rehabilitation had been unsuccessful and that the defendant had failed to complete an alcohol and drug assessment. In determining confinement was necessary, the trial court stated:

> There are so many things that work in his favor as far as that he was reporting, that he did turn himself in. But then trying to balance that with the fact that when probably the thing that was the most important he didn't go to, was the alcohol and drug assessment. And then he's testing positive for amphetamine, methamphetamine, and getting kicked out of treatment facilities for conflict, with an aggravated assault charge and an attempted robbery in his past. So this would be the third – he served 50 days, then served 100 days.

> And in balancing all of that and trying to predict whether or not he can be rehabilitated at this point, there has not been a plan submitted to the [c]ourt of where he's going to live, a program he could be in, or any

assessment of any type of alternative. So the [c]ourt is going to revoke him to serve the balance of his sentence.

In its written revocation order, the trial court noted the defendant was entitled to jail credit for the 50 day sentence that began September 9, 2017, the 100 day sentence that began April 28, 2018, and for the time he spent incarcerated between his arrest and hearing – November 22, 2018 through January 7, 2019. This timely appeal followed.

## Analysis

On appeal, the defendant does not contest the trial court's revocation order, but rather argues the trial court erred in ordering him to serve the original sentence in confinement. He states the trial court's order "was perhaps an abuse of discretion when the lesser remedy of split confinement was available." The State contends the trial court did not abuse its discretion in revoking the defendant's probation or in ordering him to serve the original sentence in confinement. After our review, we affirm the judgment of the trial court.

A trial court has statutory authority to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a preponderance of the evidence. Tenn. Code Ann. § 40-35-310, -311; *see State v. Clyde Turner*, No. M2012-02405-CCA-R3-CD, 2013 WL 5436718, at *2 (Tenn. Crim. App. Sept. 27, 2013). "The trial judge has a duty at probation revocation hearings to adduce sufficient evidence to allow him to make an intelligent decision." *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). If a violation is found by the trial court during the probationary period, the time within which it must act is tolled and the court can order the defendant to serve the original sentence in full. Tenn. Code Ann. § 40-35-310; *see State v. Lewis*, 917 S.W.2d 251, 256 (Tenn. Crim. App. 1995). To overturn the trial court's revocation, the defendant must show the trial court abused its discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). "In order to find such an abuse, there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Id.* (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)).

The defendant admits that he violated his probation. This Court has repeatedly cautioned that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App Feb. 10, 1999); *see State v. Timothy A. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2

(Tenn. Crim. App. Feb. 11, 2002). This was the defendant's second probation violation. In our view, the trial court was more than patient with the defendant considering his violations both times were for using methamphetamine and amphetamine and refusing to complete an alcohol and drug assessment. Accordingly, we have no hesitation in concluding the trial court did not err by ordering the defendant to serve the balance of his sentence in confinement.

In addition to the defendant's admissions, the record contains sufficient evidence to support the trial court's decision to revoke probation and order the defendant to serve the original sentence in confinement. The uncontroverted proof presented during the revocation hearing revealed the defendant, on three separate occasions, failed to complete a scheduled alcohol and drug assessment; the defendant had yet to pay anything towards his supervision fees or court costs; the defendant, for the second time while on probation, tested positive for methamphetamine and amphetamine; and the defendant had no "plan" should the trial court have decided to release him.

As noted above, once a violation of probation is found, the trial court can order the defendant to serve the original sentence. Tenn. Code Ann. § 40-35-310; *see Lewis*, 917 S.W.2d at 256. Though the defendant testified at the revocation hearing and asked the trial court for another second chance on probation, the trial court was not persuaded and was under no obligation to comply with the defendant's request. The record contains sufficient evidence the defendant violated the terms of his probation as he stipulated to and testified to the same. *Leach*, 914 S.W.2d at 106. Accordingly, the trial court acted within its discretion in ordering the defendant to serve the original sentence of four years in the Tennessee Department of Correction. Tenn. Code Ann. § 40-35-310; *Clyde Turner*, 2013 WL 5436718, at *2; *Lewis*, 917 S.W.2d at 256. The defendant is not entitled to relief.

## Conclusion

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the defendant's probation and ordering him to serve the original sentence in confinement.

_____
J. ROSS DYER, JUDGE